The Chancellor.
It is manifest from an examination of the agreement, of the date of Sept. 12, Í845, between Ryerson, Detmold, and the Greenwich Bank, that the amount of the decree entered in the suit in this Court, in favor of the American Life and Fire Insurance and Trust Company against Ryerson, was not the basis of the said agreement between Ryerson, Detmold, and the Greenwich Bank. The agreement states that a decree had been entered in favor of the said Company for $21,000-
That the decree had been assigned to Detmold, and by him assigned to Wheelwright in trust, &c.; that the Bank had, on the day of the date of. the agreement, recovered a Judgment in New York, against Ryerson, for 8,481
These two sums amount to $29,481
And yet the whole sum which, by the agreement, is to be paid by Ryerson, is $21,000
But, further, in addition to the amount of the decree, 21,000
and the amount of the Bank Judgment, 8,481
the agreement says that Detmold has paid Ryerson 4,000- and agrees to pay him the further sum of $4000, as the same may be required for completing the furnace, to be expended by and under the direction of
Detmold, 4,000
These four sums amount to $31,481
And yet the whole sum which, by the agreement, is to be paid by Ryerson is $21,981
What, then, was the basis of the agreement. The $13,500, for which Ryerson gave his nine notes, bearing the same date with the agreement, and payable at different periods, $13,500'
*17 and the amount of the Bank Judgment, 8,48T
make the exact sum of $21,98T
the payment of which hy Ryerson is provided for hy the agreement, and on the payment of which the assigned decree is to he assigned to Ryerson and the Judgment of the Bank to he cancelled.
But, for what were Ryerson’s notes, for $13,500, given 1 Were they given for or to secure the decree assigned to the Bank ? Clearly not; for the agreement says that the Bank loaned $12,000 (to Detmold,) on the last eight of them : Detmold retained the first of them. It is clear, then, that Ryerson’s notes for $13,500 were given for money to be advanced on them. And that amount, with the amount of the Bank Judgment entered against Ryerson, amount to the $21,98T, which, by the agreement, Ryerson is to pay.
But how much money did Ryerson get, or get the benefit of.
The agreement says that Detmold paid him $4,000
and agrees to pay him (in the manner above stated) 4,000
These sums, with the amount of the Judgment, 8,48T,
amount to $16,48T
The amount to be paid by Ryerson, by the terms of the agreement, is $21,98T,
being $5,500 more than the money he got and was or is to get and the amount of the Judgment. For what was Ryerson to pay this additional $5,500 1 The answer is plain. The decree in the case of the American Life and Fire Insurance and Trust Company vs. Ryerson was to be arranged, and, instead of being cancelled, was to be assigned to the Bank, to secure the whole money advanced, and for which Ryerson’s notes for $13,500 were taken ; $8,000 of which was paid or to be paid to him, and the residue of which was to be paid for the said decree; and if $5,500 was paid for the decree, then, the amount paid or to be paid Ryerson, and the amount paid for the decree, amount to the $13,500, for which Ryerson gave his notes, and the decree was to be an additional security for the amount of the Bank Judgment and for the $13,500 for which *18 Ryerson gave his notes ; this $18,500 also including the amount paid for the decree. To carry out this arrangement Ryerson withdraws his answers, filed in the suit in this Court, of the American Life and Fire Insurance and Trust Company, against him, and consents that a decree be entered therein for $21,000. The amount required to buy the depreciated bonds of that Company, to an amount sufficient to procure the assignment of the decree, was then arranged by the Bank and the assignment of it obtained; the arrangement was completed and the said tripartite agreement entered into. This agreement, when examined carefully, is itself, notwithstanding its involution, sufficient to satisfy us that the substance of the transaction is as above stated. But the petition of Ryerson, on which the order now sought to be vacated was made, states distinctly that such was that arrangement; and, for the purposes of this motion, must be taken as true.
Whether there was usury in this agreement, I do not now find it necessary to express an opinion. Indeed, it cannot, from the facts before us, be certainly told, as it seems to me. We are not told how much was paid to get the assignment of the decree. If $5,500 was paid for the decree and $8,000 was paid to Ryerson, that would make the $13,500, for which Ryersons notes were given. This would leave the question of usury in the agreement to rest on the fact, as stated in the agreement, that $4,000 of the money was to be paid to Ryerson as the same might be required for completing the furnace, to be expended by and under the direction of Detmold ; the notes drawing interest for the whole amount from their date. Whether there was usury in the Bank Judgment, we have no means of telling. 6
On the petition of Ryerson, so far as it rests on the allegations of usury, the order to stay the sale is not sustainable. The petition must be left, in that respect, to such other course as he may be advised to adopt. If, indeed, the property was manifestly indivisible, and the money was all due, and the party having the control of the decree (which, in the view I have taken, is to be regarded as only an additional security for the payment of the money) was about to sell the whole property to *19 raise the whole money, and the usury was made manifest by the petition, a grave question would be presented. A party complainant in this Court may have relief to the extent of the usury, though it should be held that he was not entitled to have the securities entirely defeated; and the Court might order a stay of sale till the amount of the usury could be ascertained. But I do not think it necessary to go farther into this part of the case. The property is manifestly divisible, and but a part of the money is due. The decree which has been assigned to the Bank is but one of the securities for the money. The Court should, in my judgment, act upon the principal agreement and allow the decree to be used only so far and at such times as shall be necessary to enforce the performance of the principal agreement, and in the same way as if it had been asked to direct process of Execution on that decree in view of the principal agreement. The decree, as entered, was general, that the mortgaged premises be sold to raise and satisfy the whole '$21,000, and that a fi. fa. issue for the sale of so much of the premises as would be sufficient to pay that sum. The officer to whom the fi. fa. was directed was not authorized, by the decree, to sell only enough to pay what was due under the terms of the agreement. When, therefore, ho was about to sell the premises to pay the whole sum when only a small portion of it was due, Ryerson’s only resort was an application to the Court to stay the sale as proposed to be made. And I apprehend that the relief which, I think, ought to be afforded on this part of the case, comes within the principle on which this Court uniformly acts in ordering sales of mortgaged premises. It does not direct the whole to be sold when only one instalment or portion is due, if a part of the premises can be sold to pay that instalment. And, in this case, it seems to me it would be manifest injustice to sell 4500 acres of land, in various tracts, and farms and dwelling houses, and a grist mill, saw mill, forge and furnace, to pay the small portion of the money that has become due under the said agreement. In Campbell and others vs. Macomb and others, 4 John. Ch. 61, 534, it appeared, by the Master’s report, that there W'as due to the Plaintiffs, as trustees of a charity school, on two bonds and mortgages, $1,515, *20 for interest; that the principal was not yet due, but that the bonds had become forfeited at law by the non-payment of thq interest; and that there was due to the complainant Campbell $27,499 98, on two Judgments; and that the mortgaged premises were manifestly indivisible and could not be sold in parcels. On this report, a decree was entered that the mortgaged premises, being a stone dam and bridge, be sold, and the proceeds be applied to pay the interest due and then the principal of the bonds and mortgages, though not due, and the residue towards paying CampbelPs Judgments. Before the day of sale, the owner of the equity of redemption paid all the arrears of interest and the costs ; and thereupon applied to the Court for an order staying the sale; and it was granted. A petition was then presented on the part of Campbell, stating that he was personally bound as collateral security for the payment of the two bonds and mortgages ; that he held two Judgments against the Mortgagor, for monies advanced and for his indemnity as such security. That the Obligor and Mortgagor was insolvent. That the security for the principal of the mortgage debts was much impaired, the dam having been much injured by a storm, since the filing of the bill; and prayed that the Mortgagor or the owner of the equity of redemption be ordered to give security to repair the dam, or pay the mortgage debt; or that the Order staying the sale be vacated. In opposition to this motion, an affidavit, was read, that the present owner of the equity of redemption was rebuilding the dam, and would probably finish it in two months. The Chancellor denied the motion. He said that when the premises are indivisible the whole may be sold and the proceeds applied to pay not only the portion due but also the residue of the debt, though not due; but that this arises from the necessity of the case ; and that more than is due is not to be raised out of .the mortgaged premises when that necessity does not exist. It is obvious that where a part of the premises can be sold to pay what is due, the necessity of selling the whole does not exist. In that case, the Chancellor said that though there was a regular decree for the sale of the whole premises, yet there could be no doubt of the power of the Court, in its discretion, to regulate the process of execution under the *21 decree. In that case, the necessity for the sale of the whole existed at the timó of the decree; for the property was indivisible ; but the Chancellor said, that necessity was avoided before the sale, by the voluntary payment of what was due; and that all that the party could in conscience require, was that the decree might remain as a security for subsequent defaults, and afford him an easy and prompt remedy when they occur. He referred to the case of Judd vs. Evans, 6 Term. Rep., 399, showing that a Court of law, after Judgment and Execution for the entire debt, will relieve the defendant on his paying the instalment due, retaining the Judgment as a security for future instalments.
In the case before us, it cannot be that there is any necessity for selling the whole of the premises to raise the amount that has become due under the agreement; and the time stipulated for the agreement may have been, and probably was, a most essential consideration with the Petitioner.
The motion to vacate the order staying the sale is denied. This I suppose to be all that I am called upon to say at present. The party holding the decree may desire to answer the petition, or take some course to controvert the facts stated in it, and, thereupon, move again to vacate the order.
Motion denied.